# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| DERENELL D. HILL, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 24-cv-05024 ) ) Judge Joan H. Lefkow |
| LIEUTENANT TIMOTHY REIDY, CHIEF RICHARD CLOUSE, DEPUTY CHIEF CHARLES CROCKETT, DEPUTY CHIEF NICHOLAS KALFAS, THE LAKE COUNTY SHERIFF'S OFFICE, and LAKE COUNTY, ILLINOIS, | ) ) ) ) ) ) ) |
| Defendants. | ) |

## OPINION AND ORDER

Derenell D. Hill brings this civil rights action against Lieutenant Timothy Reidy, Chief Richard Clouse, Deputy Chief Charles Crockett, Deputy Chief Nicholas Kalfas ("the Individual Defendants"),[1] alleging that he was improperly placed in administrative segregation at the Lake County Adult Correctional Facility ("Lake County jail") and that the conditions of his confinement violated the Eighth Amendment. U.S. Const. VIII. Additionally, he seeks injunctive relief and indemnification from the Lake County Sheriff's Office and Lake County, Illinois.[2] Defendants have moved under Fed. R. Civ. P. 12(b)(6) to dismiss plaintiff's complaint for failure

---

[1] The claim arises under 42 U.S.C. § 1983. The court has jurisdiction under 28 U.S.C. §§ 1343 and 1367. Venue is proper under § 1391(b).

[2] Defendants argue that the Lake County Sheriff's Office cannot be named as a party because it "does not have a separate legal existence from the elected official in charge." (Dkt. 12 at 7.) However, the 7th Circuit distinguishes between a sheriff's *office* and a sheriff's *police department*: the former may be sued, while the latter may not. *DeGenova* v. *Sheriff of DuPage Cnty.*, 209 F.3d 973, 976 n.2 (7th Cir. 2000) (stating that the DuPage County Sheriff's Office is a suable entity); *Magnuson* v. *Cassarella*, 812 F. Supp 824, 827 (N.D. Ill. 1992) (finding that the Cook County Sheriff's Police Department is a non-suable entity). Here, plaintiff is suing the Lake County Sheriff's Office, which is a suable entity.

to state a claim. For the reasons stated herein, the motion to dismiss (dkt. 12) is denied in part and granted in part without prejudice.

## BACKGROUND[3]

Plaintiff was in custody at the Lake County jail from around March 3, 2021 until March 20, 2024, when he was transferred to the McHenry County jail and where he is awaiting trial for various felony charges. When in custody at the Lake County jail, he was twice placed in Administrative Segregation Unit ("ASU") Level 2, which is reserved for "dangerous" and "violent" detainees. (Dkt. 1 ¶¶ 11, 30.) The Lake County Sheriff's Office describes ASU Level 2 as the following:

> Inmates classified as a Dangerous/Violent Person are a Level Two security threat to the facility and will be housed in the most secure housing in the Administrative Segregation Unit. This is an administrative action, not a disciplinary action. Therefore, this action requires no disciplinary procedures such as a hearing, rule violation forms, appeals, etc. Once assigned to this classification you will remain in this classification for a minimum of 60 days. There is no out-date for this classification. Your behavior and security requirements determine how long this classification is appropriate. Your status will be reviewed weekly at the classification meeting and your security level will be monitored. There is no "good time" or "out date" for Level Two Security Threats.

(Dkt. 1 ¶ 13.)

Reidy, with the approval of Clouse, Crockett, and Kalfas, transferred him to administrative segregation in ASU Level 2 in June 2022 for "the infraction of possession of contraband." (Dkt. 1 ¶¶ 30, 37.) Defendants did not provide plaintiff with a hearing before transferring him to ASU Level 2. He remained there for 61 days.

Plaintiff was sent to ASU Level 2 a second time in January 2024 by Reidy, again with the approval of Clouse, Crockett, and Kalfas, for "refusing to volunteer to be transferred to the

---

[3] When resolving a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the court accepts as true all well-pleaded facts in the complaint and draws all reasonable inferences in the plaintiff's favor. *See Hughes* v. *Northwestern Univ.*, 63 F.4th 615, 630 (7th Cir. 2023).

McHenry County jail due to alleged overcrowding issues at the Lake County Jail." (Dkt. 1 ¶¶ 11, 12, and 17.) Because his refusal to be transferred to McHenry County was not a disciplinary issue, plaintiff did not appear in front of a disciplinary committee for a hearing. He remained in segregation for 65 days. (Dkt. 1 ¶ 15.) Plaintiff was never considered to be a "dangerous" or "violent person" and therefore should not have been placed in ASU Level 2 either in 2022 or 2024. (Dkt. 1 ¶¶ 14, 15, 35, 36.)

Each time he was placed in ASU Level 2, plaintiff was confined to his cell for 23 hours a day and only permitted to be in the common room for one hour. Because he was handcuffed even while in the common room, he could not use the toilet there. And because he was required to be handcuffed and strapped to a Velcro restraining belt while showering, his ability to clean himself properly and prevent falls was limited. These restraints caused him to sustain a fall in the shower on March 17, 2024, causing him to injure his back and shoulder. This fall has caused lasting pain.

Plaintiff alleges that the Lake County Sheriff's Office, in violation of its own policy, maintains a custom, policy, and practice of "intentionally punishing inmates without justification" who refuse to volunteer to be housed in McHenry County. (Dkt. 1 ¶ 43.) He further alleges that the Lake County Sheriff's Office maintains a custom, policy, or practice of assigning detainees "who commit disciplinary infractions that are not violent or dangerous … to ASU Level 2." (Dkt. 1 ¶¶ 44.) Plaintiff seeks compensatory damages and injunctive relief against the Individual Defendants and the Lake County Sheriff's Office as well as indemnification from Lake County. Defendants have moved to dismiss the lawsuit in its entirety.

**LEGAL STANDARD**

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) challenges a complaint for failure to state a claim upon which relief may be granted. To survive the motion to dismiss, the plaintiff's complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

**ANALYSIS**

**A. The Fourteenth Amendment Applies to Claims Brought by Pretrial Detainees**

Because plaintiff is a pretrial detainee, his claim should be assessed under the Due Process Clause of the Fourteenth Amendment, rather than under the Eighth Amendment. *Mulvania* v. *Sheriff of Rock Island Cnty*, 850 F.3d 849, 856 (7th Cir. 2017) ("Because plaintiffs were pretrial detainees, not convicted prisoners, we assess their claim under the Fourteenth Amendment instead of the Eighth Amendment."); *Hardeman* v. *Curran*, 933 F.3d 816, 821-22 (7th Cir. 2019) (recognizing that the Fourteenth Amendment's protections extend to conditions of confinement cases brought by pretrial detainees). Plaintiff's failure to plead the proper legal theory does not defeat his claim. *Whitaker* v. *Milwaukee Cnty., Wisc.*, 772 F.3d 802, 808 (7th Cir. 2014) ("[I]t is factual allegations, not legal theories, that must be pleaded in a complaint.")

4

B. **Placement in Administrative Segregation in ASU Level 2**

Plaintiff alleges that defendants violated his constitutional rights by twice assigning him to ASU Level 2 as a form of punishment without due process, first in 2022 and again in 2024.

Under the Fourteenth Amendment, "[b]ecause administrative segregation of a pretrial detainee for *non-punitive* reasons is not constitutionally prohibited punishment, it does not require the government to first provide due process protections." *Erler* v. *Dominguez*, No. 09 C 88, 2011 WL 781528, at *5 (N.D. Ind. Feb. 28, 2011) (citing *Higgs* v. *Carver*, 286 F.3d 437, 438 (7th Cir. 2002)) (emphasis added). Pretrial detainees, however, may not be punished by "being placed in segregation" without being given the opportunity to contest the terms of their confinement. *Potts* v. *Moreci*, 12 F. Supp. 3d 1065, 1074 (N.D. Ill. 2013) (citing *Rapier* v. *Harris*, 172 F.3d 999, 1002 (7th Cir. 1999)); *Higgs*, 286 F.3d at 438 (a "pretrial detainee cannot be placed in segregation as a punishment for a disciplinary infraction without notice and an opportunity to be heard; due process requires no less.").[4]

Defendants do not dispute that, in 2022, they placed plaintiff in ASU Level 2 for possessing contraband. And since policy states that ASU Level 2 is reserved for detainees classified to be dangerous or violent, which he maintains he never was,[5] defendants' conduct appears punitive. Plaintiff says that he was placed in ASU Level 2 a second time in 2024 because

---

[4] Defendants cite *Sangathit* v. *Lawrence*, 2020 WL 1529483, at *3 (S.D. Ill. March 31, 2020) (quoting *Townsend* v. *Fuchs*, 522 F.3d 765, 771 (7th Cir. 2008)) (holding that inmate's transfer to disciplinary segregation based on a false investigation ticket was constitutional because he did not have a liberty interest in avoiding the transfer). Defendants fail to acknowledge that the plaintiff in that case was not a pretrial detainee.

[5] To the extent plaintiff bases his constitutional claim on the premise that his placement in administrative segregation violated a policy of the Lake County Sherriff's Office, his argument is unavailing. *Rowe* v. *Wall*, No. 15-C-1006, 2016 WL 11695974, at *4 (E.D. Wis. July 12, 2016) ("Failure to follow DOC and prison procedures or policies is not, by itself, a constitutional violation or a violation of federal law.")

5

he refused to be transferred to McHenry County jail. Placing a new arrival in administrative segregation temporarily due to overcrowding issues may not entitle a detainee to due process protections, *see Higgs*, 286 F.3d at 438, but that was not the situation in this case. Plaintiff alleges that defendants placed him in ASU Level 2 because of his unwillingness to comply with defendants' transfer request. As alleged, defendants' purpose was punitive. *See id*. ("As long as the [jail's] purpose [to place pretrial detainee in segregation] was indeed [] preventive rather than [] punitive [], he would not be entitled to notice and a hearing.").

Thus, plaintiff's allegations, taken as true, are sufficient to establish that defendants improperly placed him in ASU Level 2 without due process both times. His claim may proceed under the Fourteenth Amendment.

### C. Conditions of Confinement on Administrative Segregation

Next, plaintiff alleges that the conditions of his confinement while in ASU Level 2 constituted a deprivation of his constitutional rights because there was "no penological justification" for the limitations imposed on him. (Dkt. 1 ¶¶ 27-28.) Specifically, Hill challenges being strapped with a Velcro restraining belt and handcuffed while showering, being precluded from using the common area restroom because his handcuffs limited his ability to wipe himself, and being confined to his cell for 23 hours of the day.

Under the Fourteenth Amendment, a "pretrial condition can amount to punishment in two ways: first, if it is imposed for the purpose of punishment, or second, if the condition is not reasonably related to a legitimate goal—if it is arbitrary or purposeless." *Mulvania*, 850 F.3d at 856. To state a claim, a pretrial detainee must provide "objective evidence that the challenged governmental action is not rationally related to a legitimate governmental objective or that it is excessive in relation to that purpose." *Kingsley* v. *Hendrickson*, 576 U.S. 389, 389 (2015). The

6

protections of the Due Process Clause are only implicated when the "severity and duration of the conditions" described "so restrain[] an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic human needs—*e.g.*, food, clothing, shelter, medical care, and reasonable safety…" *Hardeman*, 933 F.3d at 825 (citing *DeShaney* v. *Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 200 (1989)).[6]

### i. Shower Restraints

Plaintiff alleges that each time he was placed in ASU Level 2, he was forced to wear handcuffs and a Velcro belt while showering. These restraints hindered his ability to clean most of his body and caused him to suffer a fall while showering in March 2024, resulting in long-term pain.

The Supreme Court has held that "[r]estraints that are reasonably related to the institution's interest in maintaining jail security do not, without more, constitute unconstitutional punishment, even if they are discomforting and are restrictions that the detainee would not have experienced had he been released while awaiting trial." *Bell* v. *Wolfish*, 441 U.S. 520, 540 (1979). *See also Sanders* v. *Hopkins*, 1997 WL 755276, at *2 (10th Cir. 1997) ("The condition or restriction of requiring a pretrial detainee in disciplinary segregation to wear restraints while showering is reasonably related to the legitimate governmental objective of promoting security in the detention facility. Thus, under *Bell*, it does not amount to a 'punishment' which would violate the detainee's due process rights."). What these cases make clear is that the use of restraints is reasonable when a detainee poses a security threat. When a

---

[6] Again, defendants incorrectly apply an incorrect standard to argue that plaintiff has not stated a conditions of confinement claim, citing *Hardaway* v. *Meyerhoff,* 734 F.3d 740, 743 (7th Cir. 2023), which addressed an Eighth Amendment claim. The Supreme Court makes a clear distinction between the rights of convicted inmates and pretrial detainees. *Sandin* v. *Conner*, 515 U.S. 472, 484 (1995) ("a detainee 'may not be punished prior to an adjudication of guilt in accordance with due process of law'") (citing *Bell*, 441 U.S. at 535)).

7

detainee does not pose a security threat, "requiring an inmate or detainee to wear restraints while showering … may violate the constitution if the inmate or detainee suffers any serious physical injury as a result of showering in restraints." *Oliver* v. *Butler*, No. 5:12-CT-3157-FL, 2015 WL 847428, at *6 (E.D.N.C. Feb. 26, 2015).

In this case, because plaintiff alleges that was never deemed to be violent or dangerous while at Lake County Jail, he argues that "there was no penological justification" for the use of the restraints. (Dkt. 14 at 6.) In *Wade* v. *Kenosha County*, the plaintiff alleged that he was required to wear shower restraints while assigned to a segregated unit in the Kenosha County Jail. 2020 WL 6149715 at *2 (E.D. Wis. Oct. 20, 2020). Like Mr. Hill, Wade alleged he slipped and fell while in the shower and was unable to catch himself because of his restraints, causing continuous pain. *Id.* In his complaint, Wade did not specify whether he was a pretrial detainee or a convicted inmate at the time of the incident, so the court used the Eighth Amendment standard for convicted inmates "because [it] is the more stringent one." *Id.* at *3. Even under this more stringent standard, the court allowed the plaintiff's shower restraint claim to proceed. *Id.* at *4. The court noted that the defendants may have had legitimate nonpunitive reasons for their use of shower restraints, but because none had been identified, the claim could not be dismissed.[7] *Id.* While such a justification may be borne out through discovery, the court will not speculate at this early stage. *Buck*, 2003 WL 22118933 at *2. Defendants' motion to dismiss is therefore denied as to this condition of plaintiff's confinement.

---

[7] Defendants cite to *Bonner* v. *Beth,* 2007 WL 2220207 (E.D. Wis. July 31, 2007), to argue that "[p]laintiff's complaints about restraints while showering [do] not meet pleading muster." (Dkt. 12 at 5.) However, *Bonner* was decided on summary judgment, not a motion to dismiss, partially on the basis that "[m]aintaining jail security and effectively managing a detention facility" — were legitimate government objectives in that case. *Id*. at *11 *Bonner*, 2007 WL 2220207 at *11. Whether defendants' actions were supported by a valid non-punitive purpose is a factual question that can be resolved at a later stage.

### ii. Limited Ability to Use Common Area Bathroom

During the sole hour he was permitted to be in the common area while at ASU Level 2, plaintiff alleges he was unable to use the restroom because he could not wipe himself due to his handcuffs. Unpleasant as plaintiff's inability to use the common area restroom may have been, he could have simply used the restroom during the 23 hours of the day he spent in his cell. For that reason, plaintiff's inability to wipe himself for one hour each day does not rise to the level of a constitutional violation. *Kendrick* v. *Freeman*, 2008 WL 1816465 at *3 (N.D. Ind. April 21, 2008) (dismissing conditions of confinement for detainee who did not have access to a bathroom for a total of ten hours, intermittently, throughout the day); *see also Gilali* v. *Lacrosse Cnty.*, 2024 WL 2049004 at *1 (W.D. Wis. May 8, 2024) (citation omitted) (dismissing conditions of confinement claim brought by detainee who had to use rags in lieu of toilet paper for five days because allegations were "insufficient to support an inference that [the detainee] was subject to 'a substantial risk of serious harm'"). Because the condition is not sufficiently serious to warrant due process protection, this court need not consider whether it serves a legitimate governmental objective. The motion to dismiss is granted as to plaintiff's inability to use the restroom during his hour in the common area.

### iii. Limited Time Outside Cell

Plaintiff further alleges that he was only allowed outside his cell for one hour per day and that he was "handcuffed and told to sit shirtless" during his hour in the common area. (Dkt. 1 ¶ 24–25.) Plaintiff does not identify any "basic human needs" that were unfulfilled as a result of his limited time outside the cell and his restraint while in the common area. *See Gilmore* v. *Anderson*, 2023 WL 4118577 at *2 (7th Cir. June 22, 2023) (finding no constitutional violation where pretrial detainee was routinely kept inside his cell for 48 hours straight). Because plaintiff

9

fails to allege any injury that was specifically caused by his lack of time in the common area, the allegation is not "the kind of objectively severe condition that supports a constitutional claim." *Id*. The motion to dismiss is granted as to plaintiff's limited time outside his cell.[8]

### D. *Monell* Liability

Plaintiff separately alleges a *Monell* claim against the Lake County Sheriff's Office. *See Monell* v. *Department of Social Services*, 436 U.S. 658 (1978) (providing basis for § 1983 claims brought against municipalities.)

To state a *Monell* claim, a plaintiff must first allege that (1) he has suffered a deprivation of a constitutionally protected interest; and (2) trace that deprivation to an official policy, practice, or custom of a municipality. *First Midwest Bank ex rel. LaPorta* v. *City of Chicago*, 988 F.3d 978, 986 (7th Cir. 2021). Finally, the plaintiff must show that "the municipal action was the 'moving force' behind the federal-rights violation." *Id.* (quoting *Bd. of Cnty. Comm'rs* v. *Brown*, 520 U.S. 397, 404 (1997).

As stated above, plaintiff has satisfied the first prong of the *Monell* analysis. He has also sufficiently pleaded the existence of two customs, policies, and practices of the Lake County Sheriff's Office that deprive pre-trial detainees of their due process rights. First, he alleges that Lake County Jail has a custom, policy, and practice of assigning detainees to ASU Level 2 as punishment without any due process for non-violent disciplinary infractions. Second, he alleges that Lake County Sheriff's Office maintains a custom, policy, and practice of punishing detainees for refusing to be transferred to McHenry County jail "without justification." (Dkt. ¶ 43.) He has connected both to the deprivation of his own rights, as well as to those of other detainees. *See Lamb* v. *Cnty. of Lake*, 2021 WL 4306144 at *7–8 (N.D. Ill. Sept. 22, 2021)

---

[8] These conditions of confinement may be factors for a jury to consider if they are assessing damages on plaintiff's surviving claims.

10

(finding that plaintiff "pleaded enough facts to support the *Monell* claim against the Lake County Sheriff's Office" by "plead[ing] the existence of a policy that barred pretrial detainees from receiving treatment for hepatitis C."). Accepting these allegations as true at this stage of the litigation, plaintiff has pleaded enough facts to support his *Monell claim*.

### E. Indemnification

Because plaintiff's claim for compensatory damages against the Individual Defendants and the Lake County Sheriff's Office (Count I) survives, the indemnification claim against Lake County remains.

### CONCLUSION AND ORDER

For the reasons stated above, defendants' motion to dismiss (dkt. 12) is denied in part and granted in part without prejudice. Plaintiff is directed to amend his complaint to omit dismissed claims and to conform remaining claims to be consistent with the court's opinion. A scheduling conference will be held on May 14, 2025, at 9:30 a.m. in person in courtroom 2201.

Date: March 31, 2025

_____
U.S. District Judge Joan H. Lefkow